ALLEN H. GREER, plaintiff in error, *vs.* MARTHA E. HAUGABOOK, administratrix, *et al.*, defendants in error.

1. Section 721 of the Code prohibiting the establishment of private ferries within three miles of any public bridge, does not prohibit the establishment of a private ferry within three miles of a public ferry.

2. Section 724 of the Code authorizing the owner of any land through which a stream passes, on both sides of said stream, to establish a bridge or ferry thereon at his own expense, and charge toll for crossing, is to be construed in harmony with section 2207, which provides that the right to construct a bridge or establish a ferry for private use, within or adjoining lands, is appurtenant to the ownership of the land, but the right to establish and keep a public bridge or ferry is a franchise, and must be granted by the State, and so construing, section 724 is only to be understood to apply to a private ferry, which the owner of the lands may establish for his private use, and which he may also occasionally use for carrying others over and charge toll therefor, but which he cannot commonly and usually use for such purpose, so as to make the same a public ferry.

3. A franchise of a ferry is the subject of sale, and may be transferred and inherited.

4. A franchise of a ferry may be lost by non-user, but under section 1680 of our Revised Code, the forfeiture only dates from the judgment of a Court of competent jurisdiction declaring the forfeiture.

Injunction. Public and private ferry. Public bridge. Riparian rights. Franchise. Forfeiture. Before Judge CLARK. Macon county. At chambers. August 27th, 1872.

Allen H. Greer filed his bill against Martha E. Haugabook as administratrix upon the estate of Daniel Haugabook, deceased, Zacariah Quick, William P. Drumwright, James A. Smith, William Miner and James P. McCall, containing substantially the following allegations:

Greer *vs.* Haugabook.

That on the ...... day of December, 1868, complainant leased from the Ordinary of Macon county the ferry known and distinguished as the ferry between the towns of Oglethope and Montezuma, across Flint river, for the term of five years, and in accordance with said lease he erected a substantial bridge across the creek, placed a good and safe rope and boat across the river, and has promptly transported all persons seeking to cross at the rates prescribed by law; that complainant entered into bond with security for the purpose of indemnifying the county against loss and for the faithful performance of his part of the said contract; that the net profits of said ferry amount to about $400 00 per annum; that at the time the aforesaid contract was entered into there was no ferry or toll bridge on Flint river nearer than Danville, in Sumter county, and Lanier, or a few miles above, in Macon county; that the estate of Daniel Haugabook is possessed of certain real estate, lying on both sides of Flint river, within two or three miles above the ferry, leased by complainant; that Martha E. Haugabook, administratrix upon said estate has entered into a contract with certain persons to open a ferry across Flint river for the free use of the public; that there is no order of Court for said ferry, no bond and security given to protect the public against loss or damage; that very many years ago there was a ferry kept on said land, but it has been abandoned for more than twenty-three years, and whatever right or franchise existed has long since ceased; that said land has passed through the hands of various parties, and the public road leading to said former ferry on either side of the river long since discontinued as such and closed up; that the use of said ferry by the public, either free or for toll, will very greatly, if not entirely destroy the profits of the ferry leased by complainant; that said administratrix has combined with the other defendants to open and run, free of expense to the traveling public, the old ferry on the lands belonging to the estate of Daniel Haugabook, deceased, without authority of law and in violation of the rights of complainant. Prayer, that the writ of injunction may issue to said defendants, enjoin-

ing and restraining them from using or permitting others to use the ferry on the lands of said Daniel Haugabook for the purpose of carrying the public, either free or for toll; that the writ of subpœna may issue.

Martha E. Haugabook, administratrix, answered the bill, substantially, as follows:

That complainant's rights, under said lease were not exclusive, and especially did not prevent the owners of lands on both sides of said river from reopening a ferry on their own lands; that defendants, with full authority from the heirs of Daniel Haugabook, have proceeded to put in operation a ferry on said river, at the place designated in complainant's bill, for the purpose of passing over persons and wagons free of toll; that defendant has the right to do this, not only for her own convenience, and for the benefit of the estate which she represents, but also for the purpose of charging toll if she shall think proper; that the property on both sides of the river belonging to the estate which she represents, and the river not being a riparian stream, nor a navigable stream, the defendants have the right to put said ferry in operation; that, on December 19th, 1827, the Legislature of Georgia did grant to one John Rushin the right to erect a ferry on Flint river, on his own land; that said Rushin kept up said ferry until about the year 1845, when he sold said land and charter to one Senus Clark, who kept the same up until Daniel Haugabook bought the same, in the year 1853; that said Haugabook continued to claim said right, but, in fact, never kept up said ferry, on account of the building of the Southwestern Railroad, when the same became unprofitable; that, on account of the peculiar condition of the plantation, it is important to have said ferry to obtain timber from the west side of the river for fences and other purposes, the east side having comparatively little timber; that defendant and the other heirs-at-law of Daniel Haugabook, deceased, have consented that said ferry may be regulated and controlled by the other defendants, they having the right to free passage over the same; that defendant is informed that it is more than three miles, according

to the course of the stream, from complainant's ferry to that of defendants'.

The other defendants adopted the foregoing answer as their own. Affidavits were read in support of the bill and answer, unnecessary to be here set forth.

The Chancellor refused the injunction and complainant excepted, and assigns said ruling as error.

PHIL. COOK, represented by THE REPORTER, for plaintiff in error.

No appearance for defendant.

McCAY, Judge.

1. It would be making rather than expounding law, to say that the Legislature, in section 721 of the Code, where it provides that no private ferry shall be established within three miles of a "public bridge," means within "three miles of a public bridge or ferry." It is enough to say, that the word "ferry" is not there, and that if the Legislature intended to include ferries, it is only a fair presumption to suppose they would have said so. We can see good reasons, too, why the word is left out. A bridge is a costly thing, and men might well be unwilling to go to the expense of building a bridge, if they were liable to have a ferry set up close by them. This reason would be less strong in the case of a ferry, as the expense of the ferry is less than a bridge, and the cost of the former is rather in the expense of running it, than of establishing it at first. The other question in this case is one of more difficulty, and one that has given us much trouble.

2. Section 721 of the Code, standing alone, would seem to allow any owner of the land on both sides of a stream to establish and use a ferry thereon at his discretion, and such was the Act of 1850, of which this section is a codification.

3. But section 2207 expressly says that a public ferry is a franchise, and that the owner of the land does not have the right to establish a public ferry. At first reading, these two

sections would seem to conflict, and perhaps they do. They occur in different divisions of the Code, one under the head of " Organization of the State and Counties," and the other under the head of " Eminent Domain." As is well known, the Code is the result of the labors of different men, and each of these general subjects were intrusted to different persons. Perhaps, in their consultations, they overlooked this discrepancy. At any rate, it exists, and it is our duty, if we can, to give them both effect.

The solution which occurs to us, is the distinction between a private and a public ferry. A man may have a flat on a stream, and may use it to carry over his own people, wagons, etc., and he may occasionally take over a neighbor and take pay for it, yet it is not, necessarily, a public ferry, because he does not make it a constant, regular business. There is the same distinction between a carrier and a common carrier, between one who may, on occasions, hire out his horse, and a livery man, or one who may, at times, take pay for a meal or bed from a traveler, and an inn-keeper. Perhaps this, then, is the true meaning of these statutes, taken together. A public ferry is open to all. Regular fare is established. The ferryman is a common carrier. He is bound to take over all who come, and he is bound to keep up, and in good order, his ferry, and he is held to strict liability. Such a right exists, not as appurtenant to his land, but is a franchise which needs the grant of the proper public authority. A private ferry is mainly for the use of the owner, and though he may take pay for ferriage, he does not follow it as a business. His ferry is not open to the public, at its demand. He may, or may not, keep it going, etc. We admit that these words in section 724 and the adjoining sections are difficult to reconcile with this distinction, but, in the main, we think this distinction will harmonize the provisions of the Code, taken altogether.

4. A franchise of a ferry is not exactly a corporation, though it has some of the incidents of one. It is rather an incorporeal right, lying in grant. It is the subject of sale, and of inheritance. Without question, a ferry franchise may

be lost by non-user; but, under our Code, this only dates from the judgment of a Court declaring the forfeiture; such is the express language of the Code, and we see nothing in the facts of this case to prevent the application of the rule to it.

Judgment affirmed.